# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ARTURO C. PORZECANSKI,<br>3101 New Mexico Avenue, N.W., Apartment 1009<br>Washington, DC 20016,<br><br>Plaintiff,<br><br>        v.<br><br>SYLVIA BURWELL, Secretary<br>United States Department of<br>Health and Human Services,<br>200 Independence Avenue, S.W.<br>Washington, DC  20201,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE MEDICARE ACT

### NATURE OF ACTION

1.      This is an action by an individual Medicare beneficiary ("Beneficiary") for judicial review and declaratory and injunctive relief concerning a denial of Medicare benefits.

2.      Medicare is a federal health insurance program administered by the defendant Secretary of the United States Department of Health and Human Services ("HHS").  Part B of the Medicare Act covers medical and other health services, 42 U.S.C. § 1395k(a)(1), including the reasonable and necessary use of a drug furnished incident to a physician's service in a hospital.  *Id*. §§ 1395x(s)(2)(B), 1395y.

3.      The coverage denial at issue concerns the provision of intravenous immune globulin ("IVIG") therapy furnished to the Beneficiary incident to physicians' services

administered to him as an outpatient at MedStar Georgetown Medical Center in December 2014

for the treatment of Systemic Capillary Leak Syndrome ("SCLS").

4.       SCLS is a very rare, devastating disease.  Absent appropriate treatment, it results

in frequent admissions to intensive care units for extended periods, irreversible damage to vital

limbs and organs, and, ultimately, loss of life itself.

5.       IVIG is a drug therapy that has proven extremely effective for treatment of

SCLS: "Intravenous immunoglobulin prophylaxis is associated with a dramatic reduction in the

occurrence of [SCLS] attacks in most patients, with minimal side effects."[1]  Since he began

treatment with IVIG therapy in 2009, which was covered by his private health insurance carrier,

the Beneficiary has been free of the life-threatening and debilitating episodes that previously

resulted in several extended stays in intensive care and left him permanently disabled.

According to one component of HHS, the National Institutes of Health ("NIH"), IVIG therapy is

the "standard of care" for treatment of individuals with SCLS.  Indeed, in the final agency

decision in this case, an administrative law judge ("ALJ") sitting in another component of HHS

found "[t]he evidence of medical necessity for the use of IVIG for the Beneficiary's condition

[is] compelling," as it is supported by NIH as the "standard of care" for SCLC and NIH is "the

primary institute for the study and treatment of the condition [SCLS]."

6.       The ALJ, however, denied coverage in this case on the mistaken ground that this

reasonable and necessary IVIG therapy furnished incident to physicians' services in a hospital is

not a Medicare-covered benefit.  The ALJ's denial is plainly wrong, and must be reversed,

because it misapplies inapposite standards under the Medicaid statute (an entirely separate,

federal/state program for low-income individuals) and reflects a pervasive misunderstanding of

---

[1] Zhihui Xie et al., *High-Dose Intravenous Immunoglobulin Therapy for Systemic Capillary Leak Syndrome (Clarkson Disease)*, 128 AM. J. MED. 1, 91 (Jan. 2015) (included in the medical literature in the administrative record for this case).

the Medicare law and related program rules.  *Cf. Caring Hearts Personal Home Servs., Inc. v. Burwell*, 824 F.3d 968, 976-77 (10th Cir. 2016) ("This case has taken us to a strange world where the government itself — the very 'expert' agency responsible for promulgating the 'law' no less — seems unable to keep pace with its own frenetic lawmaking. . . .  But whatever else one might say about our visit to this place, one thing seems to us certain:  an agency decision that loses track of its own controlling regulations and applies the wrong rules in order to penalize private citizens can never stand.")

7.      Although plainly wrong, the ALJ's decision is not an isolated error.  Since he qualified for Medicare in 2014, after paying into this health insurance program for nearly five decades, the Beneficiary has continued to receive repeated Medicare Part B coverage denials for his ongoing and lifesaving treatment with IVIG.

8.      Accordingly, the Beneficiary seeks an order reversing the final decision in this case and granting declaratory and injunctive relief necessary to ensure that the same unlawful denial of coverage does not continue to be repeated to the detriment of this Beneficiary and others like him who are afflicted with SCLS.

## JURISDICTION AND VENUE

9.      This action arises under title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.

10.     Jurisdiction is proper under 42 U.S.C. §§ 1395ff(b)(1)(A), which incorporates 42 U.S.C. § 405(g), and 1395ff(d)(3)(B).

11.     Venue is proper in this judicial district under 42 U.S.C. § 1395ff(b)(1)(A) and 42 U.S.C. § 405(g)

## PARTIES

12.     The plaintiff is Arturo C. Porzecanski, a Medicare Part B beneficiary.  He resides in the District of Columbia at 3101 New Mexico Avenue, N.W., Apartment 1009, and has his principal place of business at 4400 Massachusetts Avenue, N.W.

13.     The defendant is Sylvia Burwell in her official capacity as Secretary of HHS, the federal agency that administers the Medicare program.  References to the Secretary herein are meant to refer to her, her subordinates, and her official predecessors or successors as the context requires.

14.     The Centers for Medicare and Medicaid Services ("CMS") is a component of HHS with responsibility for day-to-day operation and administration of the Medicare program. References to CMS herein are meant to refer to the agency and its predecessors.

## MEDICARE PART B AND COVERED SERVICES

15.     Medicare is a federal health insurance program for aged, blind and disabled individuals.  42 U.S.C. § 1395 et. seq.

16.     Medicare Part B covers "medical and other health services," 42 U.S.C. § 1395k(a)(1), including drugs that are not usually self-administered, are furnished incident to physicians' services in a hospital outpatient department, and are reasonable and necessary for treatment.  42 U.S.C. §§ 1395x(s)(2)(A), 1395y; *see also* Medicare Benefit Policy Manual, CMS Pub. 100-02, ch. 15 § 50.

17.     Drugs approved by the Food and Drug Administration ("FDA") are considered reasonable and necessary for indications specified on the labeling.  Medicare Benefit Policy Manual, CMS Pub. 100-02, ch. 15 § 50.4.1.

18.     The process for obtaining FDA approval of a new drug or new indication for an approved drug is limited, however, insofar as the approval process is initiated by the drug

manufacturer.  This costly and time-consuming process is typically driven by economic considerations of the manufacturer, and it often is not commercially viable for a drug manufacturer to seek supplemental FDA approval of a drug for a new use that benefits only a small segment of the population.

19.     The Medicare program recognizes this limitation on the FDA approval process and, thus, other, "off-label," uses of a drug are covered under Medicare Part B if the use is "medically accepted, taking into consideration the major drug compendia, *authoritative medical literature and/or accepted standards of medical practice*."  *Id.* § 50.4.2 (emphasis added).  *See also* HHS Office of Inspector General, *Review of Medicare Part B Avastin and Lucentis Treatments for Age-Related Macular Degeneration*, A-01-10-00514 at i (Sept. 2011) (Medicare Part B covers "off-label use of FDA-approved drugs and biologicals if it determines the use to be medically accepted").  Accordingly, physicians often prescribe drugs "off-label," either for other diseases, different patient populations, or in different dosages.

## MEDICARE PART B CLAIMS APPEALS

20.     The Secretary contracts with private organizations to make initial determinations on claims for benefits under Medicare Part B, including whether a particular item or service is covered.  *See* 42 C.F.R. §§ 405.920, 405.924(b).  If a beneficiary disagrees with a contractor's initial determination, then the beneficiary may request a redetermination by the contractor.  *See* 42 C.F.R. § 405.940.

21.     After an adverse redetermination by the contractor, a beneficiary may request reconsideration by another Medicare program contractor called a "Qualified Independent Contractor."  *See* 42 C.F.R. § 405.960.

22.     After an adverse reconsideration by a Qualified Independent Contractor, a beneficiary may appeal to an ALJ within HHS.  42 C.F.R. § 405.1000.

23.     The final step in the administrative appeal process is review by the Medicare Appeals Council. *See* 42 C.F.R. § 405.1100. The Medicare Act requires the Medicare Appeals Council to conclude its review of an ALJ decision within 90 days. 42 U.S.C. § 1395ff(d)(1)(A); 42 C.F.R. § 405.1100(c). If the Medicare Appeals Council fails to act within that timeframe, the beneficiary may escalate the matter to federal court for judicial review of the ALJ decision. 42 U.S.C. § 1395ff(d)(3)(B); 42 C.F.R. § 405.1132.

24.     The standard for judicial review under the Administrative Procedure Act provides that the reviewing court shall "set aside" an agency decision that is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, in excess of statutory authority or limitations, or otherwise contrary to law. 5 U.S.C. § 706(2).

## FACTS SPECIFIC TO THIS CASE

25.     The undisputed facts set forth below were found by the ALJ in his decision in this case, are supported by the unquestioned evidence in the administrative record, or both. References in the footnotes are to applicable provisions of the ALJ's decision and the evidence in the administrative record.

26.     The Beneficiary was diagnosed with SCLS in 2005.[2] SCLS is "exceedingly rare,"[3] and there is no cure.[4]

27.     The Beneficiary suffered his first, devastating episode with SCLS in 2005.[5] It "brought him near death and left him permanently, though partially, disabled."[6] That initial

---

[2] *See* Appeal of A. Porzecanski, ALJ Appeal No. 1-4030773101, HHS Office of Medicare Hearings and Appeals (Apr. 28, 2016) ("ALJ Decision") at 2; Letter dated Dec. 3, 2005 from Michael Adams, M.D., Professor of Medicine, Vice Chair & Program Director, Georgetown University Hospital ("Dr. Adams Letter") at 1; Letter dated Mar. 17, 2016 from Varun D. Sharma, M.D., Assistant Professor of Internal Medicine, Georgetown University Hospital ("Dr. Sharma Letter") at 1

[3] Dr. Adams Letter at 1; *see also* Dr. Sharma Letter at 1; ALJ Decision at 2.

[4] ALJ Decision at 2; Letter dated Mar. 18, 2016 from Kirk M. Druey, M.D., Chief, Molecular Signal Transduction Section, National Institute of Allergy and Infectious Diseases, National Institutes of Health ("NIH"), United States Department of Health & Human Services ("NIH Letter") at 1.

episode, like others that followed, was extremely costly to treat.  The first episode alone required "three months of hospitalization," including inpatient physical therapy, and about a dozen surgeries "to salvage his damaged limbs."[7]

28.     Over the course of the next four years, the Beneficiary was treated with "a preventive regimen of theophylline and terbutaline,"[8] with which he complied, but he experienced "increasingly more frequent episodes of SCLS, as is typical of the uncontrolled progression of this syndrome, which often leads to the patient's death."[9]  This occurrence was not unusual, as "patients frequently break through this regimen with SCLS episodes and/or are unable to tolerate these drugs."[10]  Each of the Beneficiary's episodes "required hospitalization and management in [an] . . . Intensive Care Unit, because each one is limb- and organ-threatening, and can easily lead to a fatality, as the medical literature amply attests."[11]

29.     Beginning in 2009, the Beneficiary's treating physician at MedStar Georgetown Medical Center began a course of therapy with IVIG.[12]  To effectively treat SCLS symptoms, IVIG must be administered every four weeks.[13]  The Beneficiary's commercial insurance carrier at that time (CareFirst BlueCross BlueShield) initially denied coverage but later approved it because the insurer was "well aware of the failure of other therapies and the skyrocketing expense of having to treat his episodes."[14]

---

[5] Dr. Adams Letter at 1; *see also* Dr. Sharma Letter at 1; ALJ Decision at 2.
[6] Dr. Adams Letter at 1.
[7] *Id.*; *see also* Dr. Sharma Letter at 1; ALJ Decision at 2
[8] Dr. Adams Letter at 1; *see also* ALJ Decision at 2.
[9] Dr. Adams Letter at 1; *see also* ALJ Decision at 2.
[10] NIH Letter at 1; *see also* ALJ Decision at 2.
[11] Dr. Adams Letter at 1-2.
[12] *Id.* at 2.
[13] *See id.*
[14] Dr. Adams Letter at 1-2.

30.     Since he began receiving IVIG treatment in 2009, the Beneficiary has been free of "all episodes of SCLS."[15]  IVIG has been "absolutely successful" in treating the Beneficiary's SCLS symptoms, and his physicians both at Georgetown and the NIH recommend that the monthly IVIG infusions continue "indefinitely."[16]  Absent this treatment with IVIG, "he may well die."[17]

31.     The Beneficiary currently is a patient at the Clinical Center of the National Institutes of Health for Systemic Capillary Leak Syndrome.[18]  That NIH Center is "the primary referral center for SCLS in the United States" and it has "the largest cohort of patients with SCLS in the world."[19]

32.     Based on a study completed in 2014 and published last year in the *American Journal of Medicine*, NIH found that "an overwhelming majority of our study patients who experienced one or more severe SCLS attacks prior to starting IVIG (and many while on theophylline) have become essentially episode-free after starting monthly IVIG, for some as long as 8 years."[20]  NIH has concluded, based on its "unique and extensive experience with SCLS," that "IVIG is the best available treatment for this rare and enigmatic condition, and therefore should be considered the current standard of care for SCLS patients."[21]

33.     The Beneficiary received IVIG therapy on December 16, 2014 as a hospital outpatient at MedStar Georgetown Medical Center.[22]  Georgetown submitted a claim for

---

[15] *Id.*; *see also* Dr. Sharma Letter at 2; ALJ Decision at 2.
[16] Dr. Adams Letter at 2; NIH Letter at 2.
[17] Dr. Adams Letter at 2.
[18] NIH Letter at 1; ALJ Decision at 2.
[19] NIH Letter at 1; ALJ Decision at 2.
[20] *Supra* note 1.  *See also* NIH Letter at 1-2, ALJ Decision at 2.  As reflected in the administrative record for this case, a number of prestigious medical journals, including the *Annals of Internal Medicine* and *Blood* have also independently concluded that IVIG therapy is an appropriate and effective treatment for SCLS symptoms.
[21] NIH Letter at 2; ALJ Decision at 2.
[22] ALJ Decision at 1.

payment for that treatment to a Medicare Administrative Contractor, Novitas Solutions, which denied the claim.[23]

## THE BENEFICIARY'S ADMINISTRATIVE APPEAL

34.     The Beneficiary timely challenged the initial claim denial described in the preceding paragraph.  When the Medicare contractor upheld the claim denial, the Beneficiary requested reconsideration of that determination, and the denial was affirmed.   Next, the Beneficiary requested review by a Qualified Independent Contractor, which also upheld the Medicare contractor's initial determination. The Beneficiary then appealed to an ALJ within the Medicare Office of Hearings and Appeals.  The ALJ, James W. Han, conducted a telephonic hearing on April 6, 2016, and affirmed the coverage denial in a decision dated April 28, 2016, in ALJ appeal number 1-4030773101.

35.     The ALJ found that record evidence "shows persuasively that IVIG is medically reasonable and necessary for the treatment of the Beneficiary's condition."[24]  Further elaborating on that finding, the ALJ concluded that the "evidence of medical necessity for the use of IVIG for the Beneficiary's condition [is] compelling and supported by the primary institute for the study and treatment of the condition—an institute of the Department of Health and Human Services."[25]

36.     Nevertheless, the ALJ concluded that the Medicare contractor properly denied the claim for IVIG therapy because the use of IVIG for treatment of the Beneficiary's exceedingly rare condition is not an FDA-approved use for the drug or a use that is favorably listed in commercial drug compendia.[26]   In reaching this conclusion, the ALJ invoked and

---

[23] *Id.*
[24] *Id.* at 5.
[25] *Id.* at 6.
[26] *Id.* at 5–6.

misapplied an inapposite provision of the Medi<u>ca</u>id statute, inapplicable provisions of the Medicare statute that *expand* (not restrict) Part B coverage for drugs, and a Medicare contractor's "local coverage determination" that is not binding and does not deny Medicare Part B coverage for, or otherwise speak to, the use of IVIG for treatment of SCLS.[27]

37.     By letter dated June 8, 2016, the Beneficiary timely filed an appeal from the ALJ decision to the Medicare Appeals Council.

38.     By letter dated July 13, 2016, the Medicare Appeals Council acknowledged the Beneficiary's appeal, and assigned the case docket number M-2016-7076.   That acknowledgement letter indicated that, "depending on the current workload, it may be several months before the Medicare Appeals Council can act on your request for review."

39.     The 90-day period for review of the ALJ's decision by the Medicare Appeals Council lapsed on September 7, 2016.

40.     By letter dated September 7, 2016, the Beneficiary notified the Medicare Appeals Council of his intention to escalate his appeal to federal court.

41.     A representative of the Medicare Appeals Council notified the Beneficiary's legal counsel telephonically on September 13, 2016, that the Medicare Appeals Council would not issue a decision on the Beneficiary's appeal within the statutorily required timeframe.

42.     By letter dated September 22, 2016, and received by the Beneficiary's counsel on September 27, 2016, the Medicare Appeals Council acknowledged the Beneficiary's escalation request.   That acknowledgement letter confirmed that the 90 day timeframe for the Medicare Appeals Council to issue a decision "expired on September 7, 2016," thereby allowing the Beneficiary "to bypass Council review and seek review of the ALJ's decision in federal district court" within 60 days of the date on which the Beneficiary received this notice.

---

[27] *Id.*

43.     Throughout the course of the above-described administrative appeal proceedings over the past 20 months, the Beneficiary has received treatments with IVIG every four weeks, the Medicare contractors have continued to deny Medicare Part B benefits for those treatments, and the Beneficiary has had to continue appealing those denials on a claim-by-claim basis.

## COUNT I
### (For Judicial Review and Declaratory and Injunctive Relief)

44.     The ALJ's decision in this case is incorrect, and should be reversed, because the IVIG therapy furnished to the Beneficiary satisfies all relevant Part B coverage conditions for drugs provided "incident to" physician's services in a hospital.  42 U.S.C. §§ 1395k(a)(1), 1395x(s)(2)(B) and 1395y; Medicare Benefit Policy Manual, CMS Pub. 100-02, ch. 15, § 50. Medicare Part B covers the use of FDA-approved drugs, including IVIG, for an "off-label" indication that is "medically accepted, taking into consideration the major drug compendia, authoritative medical literature and/or accepted standards of medical practice."  Medicare Benefit Policy Manual, CMS Pub. 100-02, ch. 15, § 50.4.2.

45.     The Beneficiary's treatment with IVIG is "medically accepted."  The ALJ found that this treatment was "medically reasonable and necessary" because it is supported by medical literature and NIH recommends it as the "standard of care" for SCLS.

46.     The ALJ erred in concluding that Medicare covers outpatient drugs only if they are used for an indication that is approved by the FDA or is supported by one or more commercial drug compendia.  In reaching this conclusion the ALJ wrongly imported the Medicaid statute's definition of a "covered outpatient drug" to define the scope of Medicare Part B coverage for drugs furnished incident to a physician's service.  The Medicaid statute does not establish or limit Medicare Part B coverage, and the Medicare statute does not limit Medicare Part B incident-to coverage of drugs to only those uses that are listed in drug compendia.  Rather,

as stated in the Medicare Benefit Policy Manual, Medicare Part B covers "off-label" uses of drugs that are supported either by medical literature or by accepted standards of medical practice.

47.     The ALJ also erred in concluding that a statutory mandate of coverage for certain "off-label" uses of <u>anticancer drugs</u> denies coverage, by negative implication, for medically necessary "off-label" uses of other drugs.  This ALJ interpretation of the statute conflicts with its plain language as well as HHS's own interpretation of the statute as set forth in the Medicare Benefit Policy Manual, CMS Pub. 100-02, ch. 15, § 50.4.2.  Congress added the statutory coverage protections for anticancer drugs under 42 U.S.C. § 1395x(t)(2)(A) to *enhance* and ensure Part B coverage for certain "off-label" uses of anti-cancer drugs, not to restrict existing Part B coverage for medically necessary, "off-label" uses of other drugs furnished "incident to" a physician's service.

48.     The ALJ also erred in concluding that a statutory expansion of Medicare Part B coverage for the provision of IVIG for the treatment of primary immune deficiency "in the home" denies coverage, by negative implication, for a medically necessary provision of IVIG incident to physicians' services in a hospital.  The statutory expansion of Medicare Part B coverage of IVIG furnished in the home does not eliminate existing Part B coverage for medically necessary uses of IVIG furnished "incident to" a physician's service in a hospital.

49.     The ALJ also erred to the extent that he relied upon a Medicare contractor's "local coverage determination." Private Medicare contractors do not make law, and their determinations cannot expand or restrict Medicare benefits authorized under the Medicare statute and regulations.  Further, the particular local coverage determination addressed by the ALJ in this case does not directly recognize or deny Medicare Part B coverage for IVIG therapy furnished incident to physicians' services in a hospital for the treatment of SCLS.

50.     The ALJ decision in this instance is arbitrary, capricious, and otherwise not in accordance with the law; but it is not an isolated mistake.  Since qualifying for Medicare in 2014, the plaintiff Beneficiary has continued to receive Medicare Part B coverage denials for his ongoing and lifesaving treatment with IVIG by agency contractors and review entities that have consistently failed to follow the controlling regulations in denying benefits.

**REQUEST FOR RELIEF**

51.     WHEREFORE, the plaintiff Beneficiary requests an Order:

A.     declaring that the Beneficiary is entitled to Medicare Part B benefits for the reasonable and necessary provision of drugs incident to physicians' services as an outpatient in a hospital;

B.     declaring that the "off-label" use of IVIG therapy for the treatment of SCLS is safe, effective, reasonable, necessary and medically accepted because it is supported by authoritative medical literature and accepted standards of medical practice;

C.     declaring invalid, and setting aside, the final decision of the Secretary, as set forth in the April 28, 2016 decision in ALJ appeal number 1-4030773101, denying Medicare Part B benefits for IVIG therapy furnished to the Beneficiary at MedStar Georgetown Medical Center in December 2014;

D.     enjoining the defendant Secretary from continuing to deny the plaintiff Beneficiary, and other Medicare Part B beneficiaries afflicted with SCLS, Medicare Part B benefits for the provision of IVIG therapy incident to physicians' services for the treatment of SCLS;

E.     directing the defendant Secretary to promptly take steps to inform and educate HHS's contractors and administrative review entities that Medicare Part B covers the reasonable and necessary provision of drugs incident to physicians' services in a hospital,

including the "off-label" use of a drug that is medically accepted, and that the "off-label" use of IVIG therapy for the treatment of SCLS is safe, effective, reasonable, necessary and medically accepted because it is supported by authoritative medical literature and accepted standards of medical practice;

        F.    requiring the Secretary to pay reasonable attorneys' fees and costs for this action; and

        G.    providing such other relief as the Court may consider appropriate.

Respectfully submitted,

Christopher L. Keough
DC Bar No. 436567
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036-1564
ckeough@akingump.com
(202) 887.4038 (phone)
(202) 887.4288 (fax)
Counsel for Plaintiff

Dated:    October 17, 2016